1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  MICHELLE HUGHES,

8                          Plaintiff,          NO:  CV-12-3105-FVS

                v.                            ORDER GRANTING
9                                             DEFENDANT'S MOTION FOR
   CAROLYN W. COLVIN, Acting                  SUMMARY JUDGMENT
10  Commissioner of Social Security,

11                        Defendant.

12

13        Before the Court are cross-motions for summary judgment, ECF Nos. 18,

14  21.  The Court has reviewed the motions, the memoranda in support, the Plaintiff's

    reply memorandum, and the administrative record.
15
                              **JURISDICTION**
16
          Plaintiff Michelle Hughes filed an application for Supplemental Security
17
    Income ("SSI") and Social Security Disability Insurance ("SSDI") on October 27,
18
    2008.  (Tr. 16, 142-49, 150-53.)  Plaintiff alleged an onset date of May 1, 2007.
19
    (Tr. 142, 150.)  Benefits were denied initially and on reconsideration.  On August
20

    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT ~ 1

22, 2009, Plaintiff timely requested a hearing before an administrative law judge

("ALJ").  (Tr. 108-09.)  A hearing was held before ALJ Moira Ausems on

December 2, 2010.  (Tr. 36-80.)    At that hearing, testimony was taken from

vocational expert Scott Whitmer; psychological expert, Margaret Moore, Ph. D.

and the claimant, Ms. Hughes.  (Tr. 37.)  The Plaintiff was represented by Attorney

James D. Tree at the hearing.  (Tr. 36.)  On May 6, 2011, the ALJ issued a decision

finding Plaintiff not disabled.  (Tr. 16-30.)  The Appeals Council denied review.

(Tr. 1-3.)  This matter is properly before this Court under 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of this case are set forth in the administrative hearing transcripts

and record and will only be summarized here.  The Plaintiff was thirty-two years

old when she applied for benefits and was thirty-four years old when the ALJ

issued the decision.  The Plaintiff currently is unemployed and lives with her

fiancé, his grandson, and her three children.  The Plaintiff has not worked since

working as a caregiver in 2007.  The Plaintiff describes being unable to find work

due to a variety of conditions, including parasomnia and headaches.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the

Commissioner's decision, made through an ALJ, when the determination is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

1   based on legal error and is supported by substantial evidence.  *See Jones v.*

2   *Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The

3   [Commissioner's] determination that a claimant is not disabled will be upheld if

4   the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*,

5   722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial

6   evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,

7   1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McCallister v. Sullivan*,

8   888 F.2d 599, 601-02 (9th Cir. 1989) (citing *Desrosiers v. Secretary of Health and*

9   *Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)).  Substantial evidence "means

10  such evidence as a reasonable mind might accept as adequate to support a

11  conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).

12  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw

13  from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293

14  (9th Cir. 1965).  On review, the court considers the record as a whole, not just the

15  evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877

16  F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.

17  1980)).

18       It is the role of the trier of fact, not this court, to resolve conflicts in

19  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

20  rational interpretation, the court may not substitute its judgment for that of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1  prevents the claimant from performing work he or she has performed in the past.

2  If the plaintiff is able to perform his or her previous work, the claimant is not

3  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the

4  claimant's residual functional capacity ("RFC") assessment is considered.

5      If the claimant cannot perform this work, the fifth and final step in the

6  process determines whether the claimant is able to perform other work in the

7  national economy in view of his or her residual functional capacity and age,

8  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

9  416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

10      The initial burden of proof rests upon the claimant to establish a prima facie

11  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921

12  (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial

13  burden is met once the claimant establishes that a physical or mental impairment

14  prevents him from engaging in his or her previous occupation.  The burden then

15  shifts, at step five, to the Commissioner to show that (1) the claimant can perform

16  other substantial gainful activity, and (2) a "significant number of jobs exist in the

17  national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d

18  1496, 1498 (9th Cir. 1984).

19                          **ALJ'S FINDINGS**

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

1    The ALJ found that the Plaintiff met the insured status requirement through

2    June 30, 2008.  (Tr. 18.)  At step one of the five-step sequential evaluation process,

3    the ALJ found that Plaintiff has not engaged in substantial gainful activity since

4    May 1, 2007, the alleged onset date.  (Tr. 18.)  At step two, the ALJ found that

5    Plaintiff had the severe impairments of: (1) nocturnal sleepwalking with eating

6    disorder (parasomnia), (2) asthma, (3) obesity, (4) diabetes mellitus,

7    (5) hypertension, (6) fibromyalgia, (7) migraine headaches, (8) depression,

8    (9) anxiety, and (10) meth dependence by history.  (Tr. 19-23.)  The ALJ found

9    that none of the Plaintiff's impairments, taken alone or in combination, met or

10    medically equaled any of the impairments listed in Part 404, Subpart P, Appendix

11    1 of 20 C.F.R.  (Tr. 24-25.)  The ALJ determined that the Plaintiff had the RFC to

12    perform medium work subject to some non-exertional limitations, including a

13    restriction to lower semi-skilled work.  (Tr. 25-28.)  At step four, the ALJ

14    determined that the Plaintiff could not perform any relevant past work.  (Tr. 28.)

15    At step five, the ALJ, relying on the testimony of a vocational expert, found that

16    the Plaintiff could perform jobs that exist in significant numbers in the national

17    economy.  (Tr. 28-29.)  Accordingly, the ALJ found that the Plaintiff was not

18    under a disability for purposes of the Act.  (Tr. 29-30.)

19    **ISSUES**

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence or free of legal error because (1) the ALJ erred by rejecting Ms. Hughes subjective complaint testimony, (2) the ALJ failed to appropriately address the medical evidence, and (3) the Defendant failed to meet its burden to establish at that jobs exist in significant numbers that Ms. Hughes can perform.

## DISCUSSION

**Claimant's Subjective Complaints**

When the ALJ finds a claimant's statements as to the severity of impairments, pain, and functional limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas*, 278 F.3d at 958-959; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). It is well settled, however, that an ALJ cannot be required to believe every allegation of disabling pain, even when medical evidence exists that a claimant's condition may produce pain. "Many medical conditions produce pain not severe enough to preclude gainful employment." *Fair v. Bowen*, 885 F.2d 597, 603(9th Cir. 1989). Although an adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, medical evidence is a relevant factor to consider. SSR 96-7p.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    If there is no affirmative evidence that the claimant is malingering, the ALJ

2    must provide "clear and convincing" reasons for rejecting the claimant's symptom

3    testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ

4    engages in a two-step analysis in deciding whether to admit a claimant's subjective

5    symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

6    2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step,

7    the ALJ must find the claimant has produced objective medical evidence of an

8    underlying "impairment," and that the impairment, or combination of impairments,

9    could reasonably be expected to cause "some degree of the symptom."

10   *Lingenfelter*, 504 F.3d at 1036. Once the first test is met, the ALJ must evaluate

11   the credibility of the claimant and make specific findings supported by "clear and

12   convincing" reasons. *Id.*

13   In addition to ordinary techniques of credibility evaluation, the ALJ may

14   consider the following factors when weighing the claimant's credibility: the

15   claimant's reputation for truthfulness; inconsistencies either in his allegations of

16   limitations or between his statements and conduct; daily activities and work record;

17   and testimony from physicians and third parties concerning the nature, severity,

18   and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792

19   (9th Cir. 1997); *Fair*, 885 F.2d at 597 n.5.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1    The ALJ may also consider an unexplained failure to follow treatment

2  recommendations and testimony by the claimant "that appears less than candid."

3  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  As explained by the

4  Commissioner in a policy ruling, the ALJ need not totally reject a claimant's

5  statements; he or she may find the claimant's statements about pain to be credible

6  to a certain degree, but discount statements based on his interpretation of evidence

7  in the record as a whole.  SSR 96-7p.  The ALJ may find a claimant's abilities are

8  affected by the symptoms alleged, but "find only partially credible the individual's

9  statements as to the extent of the functional limitations." *Id.*

10   Although credibility determinations are the province of the ALJ, and "the

11  court may not engage in second-guessing," *Thomas*, 278 F.3d at 959, the court has

12  imposed on the Commissioner a requirement of specificity.  *Connett v. Barnhart*,

13  340 F.3d 871, 873 (9th Cir. 2003); Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir.

14  1993).  Even if the record includes evidence to support a credibility determination,

15  the reasons must be articulated with specificity by the ALJ in his decision.  The

16  court cannot infer lack of credibility or affirm credibility findings "based on

17  evidence the ALJ did not discuss."  *Connett*, 340 F.3d at 874.  Further, the

18  reviewing court cannot make independent findings to support the ALJ's decision.

19  *Id.*

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

At the December 2, 2010, hearing, Ms. Hughes testified that she suffers from a condition where she sleepwalks and binge eats.  As a result of this condition, Ms. Hughes has trouble controlling her diabetes, has suffered extreme weight gain, and is severely fatigued throughout the day.  The combination of these impairments, particularly the fatigue, prevents Ms. Hughes from working.

The ALJ found that the medically determinable impairments could reasonably be expected to cause Ms. Hughes' symptoms.  (Tr. 26.)  As there is no affirmative evidence of malingering in the record, the ALJ may only discount Ms. Hughes' subjective complaint testimony if the ALJ provides clear and convincing reasons to support an adverse credibility finding.

ALJ Ausems provided several reasons for finding Ms. Hughes not credible.  First, Ms. Hughes' statements have been inconsistent.  For example, ALJ Ausems noted discrepancies in Ms. Hughes' statements as to when her sleepwalking began.  (Tr. 27, 586, 690, 735.)  Additionally, Ms. Hughes claimed that her nocturnal eating has caused her to gain nearly 100 pounds over two years, (Tr. 62); however, Ms. Hughes medical records show that her weight has been high for several years and actually decreased in the two years prior to Ms. Hughes' hearing.  (Tr. 500, 505, 511, 519, 547, 684.)

Furthermore, Ms. Hughes' gave varying reports of her drug use.  For example, at the hearing before the ALJ, Ms. Hughes testified that she relapsed into

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

methamphetamine use because of the death of her grandmother.  (Tr. 54.)

However, in 2009, Ms. Hughes told Lisa Vickers, ARNP, that she had relapsed

three weeks prior to her grandmother's death.  (Tr. 624.)  Ms. Hughes also reported

a single methamphetamine relapse to Psychologist Jorge Torres-Sáenz that she

stated occurred in approximately March of 2009, (Tr. 589), but had reported

relapses to Sandy Birdlebough, Ph.D., ARNP, occurring prior to January 2009.

(Tr. 546.)  Similarly, Ms. Hughes reported being free of drug use in April 2009 to

Dr. Torres-Sáenz but reported using in April 2009 to Nurse Birdlebough.  (Tr. 587,

624.)  Then in 2010, Ms. Hughes denied that she abused drugs.  (Tr. 772.)  Both

treating physician Christian L. Dinescu, MD, and psychological reviewing source

noted a risk of secondary gain motivation for Ms. Hughes' symptom testimony.

(Tr. 607, 870.)  Given the plethora of inconsistencies in Ms. Hughes' testimony,

the Court finds that clear and convincing reasons support the ALJ's adverse

credibility finding.

**Medical Evidence**

In evaluating a disability claim, the adjudicator must consider all medical

evidence provided.  A treating or examining physician's opinion is given more

weight than that of a non-examining physician.  *Benecke v. Barnhart,* 379 F.3d

587, 592 (9th Cir. 2004).  If the treating physician's opinions are not contradicted,

they can be rejected by the decision-maker only with clear and convincing reasons.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

1   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may

2   reject the opinion with specific, legitimate reasons that are supported by substantial

3   evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463

4   (9th Cir. 1995).  In addition to medical reports in the record, the testimony of a

5   non-examining medical expert selected by the ALJ may be helpful in her

6   adjudication.  *Andrews,* 53 F.3d at 1041 *(citing Magallanes v. Bowen,* 881 F.2d

7   747, 753 (9th Cir. 1989).  Testimony of a medical expert may serve as substantial

8   evidence when supported by other evidence in the record. *Id.*

9          Historically, the courts have recognized conflicting medical evidence, the

10   absence of regular medical treatment during the alleged period of disability, and

11   the lack of medical support for doctors' reports based substantially on a claimant's

12   subjective complaints of pain as specific, legitimate reasons for disregarding the

13   treating physician's opinion.  *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d

14   597, 604 (9th Cir 1989).  The ALJ need not accept a treating source opinion that is

15   "brief, conclusory and inadequately supported by clinical finding."  *Lingenfelter v.*

16   *Astrue*, 504 F.3d 1028, 1044-45 *(citing Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

17   Cir. 2002)).  Where an ALJ determines a treating or examining physician's stated

18   opinion is materially inconsistent with the physician's own treatment notes,

19   legitimate grounds exist for considering the purpose for which the doctor's report

20   was obtained and for rejecting the inconsistent, unsupported opinion.  *Nguyen v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

*Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996.)  Rejection of an examining medical

source opinion is specific and legitimate where the medical source's opinion is not

supported by his or her own medical records and/or objective data. *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Ms. Hughes asserts that ALJ Ausems failed to properly consider the

evidence in the record from Paul Tompkins, MD, and Bonny Alkofer, ARNP.  Ms.

Hughes asserts that when the medical evidence is properly credited, the record

supports a finding of disability.

### *Dr. Tompkins*

Specifically, Ms. Hughes relies on two reports written by Dr. Tompkins.  In

the first report, dated December 17, 2009, Dr. Tompkins diagnosed Ms. Hughes

with parasomnia that expressed itself in sleep-eating episodes.  (Tr. 647.)  Dr.

Tompkins opined that Ms. Hughes would need to lie down four to six hours per

day.  (Tr. 647.)  Dr. Tompkins further opined that work would exacerbate Ms.

Hughes' ailments and that Ms. Hughes would miss four or more days of work per

month due to her condition.  (Tr. 648.)

In the second report, dated September 15, 2010, Dr. Tompkins retains his

diagnosis of parasomnia with sleep-eating.  (Tr. 668.)  Dr. Tompkins opined that

Ms. Hughes would need to lie down one to two hours per day.  (Tr. 668.)  Again

Dr. Tompkins opined that work would exacerbate Ms. Hughes' condition but in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

second report found that Ms. Hughes would miss two to three days of work per month.  (Tr. 669.)

ALJ Ausems rejected Dr. Tompkins opinion primarily because Dr. Tompkins "appeared to place undue reliance on the claimant's unsupported allegations."  (Tr. 27.)  The reports themselves give little evidence of the source for Dr. Tompkins conclusions.  (*See* Tr. 647-48, 668-69.)  However, Dr. Tompkins treated Ms. Hughes for nearly one and half years at Cornerstone Medical Clinic, and the clinic treatment notes, including Dr. Tompkins' notes, are in the record. ((Tr. 696-888.)  However, a review of Dr. Tompkins treatment notes reveals that Dr. Tompkins has no objective evidence of the frequency and duration of Ms. Hughes' parasomnia episodes; instead, the Ms. Hughes simply reports her episodes to Dr. Tompkins.  (*E.g.* Tr. 766, 783, 792-93, 794.)  The only evidence of Ms. Hughes' parasomnia are videos she showed to Dr. Hughes.  (Tr. 792, 797.)  Those videos show Ms. Hughes sleepwalking and eating "various sugary cereals, bread, cheese, [and] crackers."  (Tr. 797.)  However, while the videos provide examples Ms. Hughes' behavior during an episode, nothing in the videos shows the frequency of her episodes nor the repercussions from those episodes.  (*See* Tr. 792.)

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 595, 605 (9th Cir. 1989)).  As the Court has already found that the ALJ's adverse credibility determination is supported by the record, and as Dr. Tompkins' opinions as to the severity of Ms. Hughes daytime fatigue and physical injuries is based almost exclusively upon Ms. Hughes' self-reports, the Court finds that the ALJ provided a sufficient basis for discounting Dr. Tompkins' opinions.

The Court also notes that in addition to Ms. Hughes' credibility, the ALJ also recognized that Dr. Tompkins' opinions show improvement in Ms. Hughes' condition.  (Tr. 27.)  Indeed, as the ALJ points out, around the time of Dr. Tompkins' second opinion, (Tr. 668-69), Ms. Hughes was noted by both Dr. Tompkins and sleep specialist Jason Coles, MD, to be "more alert" and responding well to her medication, (Tr. 768), and to not be having as many parasomnia episodes, (Tr. 685).  (Tr. 22-24.)  Furthermore, ALJ Ausems noted that Ms. Hughes has suffered parasomnia from her teens or twenties and has performed substantial gainful activity since her teens and twenties.  (Tr. 27.)  Thus, alternative bases also support the ALJ's conclusion.

### *Nurse Alkofer*

Nurse Alkofer opined that Ms. Hughes would be limited in "her ability to work more than 20 hours per week" and checked boxes asserting that Ms. Hughes

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1  was limited to working eleven to twenty hours per week at a medium exertion level

2  due to fatigue.  (Tr. 580, 583.)   Nurse Alkofer is an "other source" for the

3  purposes of the social security regulations.  20 C.F.R. § 416.913(d)(4).  Such

4  "other source" testimony may be rejected if the ALJ gives reasons germane to each

5  witness.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

6  2006).

7      ALJ Ausems rejected Nurse Alkofer's opinion on the grounds that it was

8  based on Ms. Hughes' subjective complaints and contradicted the opinion of Ms.

9  Hughes' treating physician.  (Tr. 27.)  Nurse Alkofer produced two reports: one

10  dated October 9, 2007, and the other dated April 3, 2008.  (Tr. 580-84.)  The

11  record contains Nurse Alkofer's treatment notes for those same days.  (Tr. 480-82.)

12  Nothing in those treatment notes suggests any tests or direct observations of Ms.

13  Hughes' fatigue.  (*See* Tr. 480-82.)   In fact, on April 3, 2008, Nurse Alkofer noted

14  that Ms. Hughes was "alert, oriented, well groomed, and in no apparent distress

15  and ambulates well."  (Tr. 480.)  Given the lack of objective evidence before Nurse

16  Alkofer to support her conclusion that fatigue limits Ms. Hughes' ability to work,

17  the ALJ was correct to discount Nurse Alkofer's opinion as based on Ms. Hughes'

18  unreliable subjective complaints.

19      In addition, Nurse Alkofer's opinion contradicts the opinion of treating

20  physician Christian Dinescu, MD.  Dr. Dinescu examined Ms. Hughes on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17

1    December 11, 2008, and concluded that Ms. Hughes was not limited in her ability

2    to work.  (Tr. 572-73, 575.)   Accordingly, the ALJ provided two reasons that were

3    germane for rejecting Nurse Alkofer's opinion.

4    **Step Five Burden**

5         The Plaintiff argues that the Commissioner failed to meet her burden at step

6    five.  At step five, the burden of proof shifts to the Commissioner to show there are

7    a significant number of jobs in the national economy that Plaintiff can still

8    perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  The ALJ may rely

9    on vocational expert testimony if the hypothetical presented to the expert includes

10   all functional limitations supported by the record and found credible by the ALJ.

11   *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

12        Ms. Hughes argues that the ALJ failed to provide a proper hypothetical to

13   the vocational expert because the hypothetical failed to include all of Ms. Hughes'

14   limitations.  However, the limitations Ms. Hughes asserts should have been

15   included are those limitations identified by Ms. Hughes' subjective testimony and

16   the discounted opinions of Dr. Tompkins and Nurse Alkofer.  As the Court has

17   determined that the ALJ's treatment of Ms. Hughes' testimony and the opinions of

18   Dr. Tompkins and Nurse Alkofer were supported by the record and free of legal

19   error, the Court concludes that the hypothetical given to the vocational expert

20   accurately reflected those limitations that are supported by the record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

1  Accordingly, the Defendant met the burden of showing that substantial jobs exist

2  in the national community that the Plaintiff is capable of performing.

3       Accordingly, **IT IS HEREBY ORDERED:**

4       1.  The Plaintiff's motion for summary judgment, ECF No. 18, is DENIED.

5       2.  The Defendant's motion for summary judgment, ECF No. 21, is

6            GRANTED.

7       3.  JUDGMENT shall be entered for the Defendant.

8       **IT IS SO ORDERED**.

9       The District Court Executive is hereby directed to enter this Order, to

10 provide copies to counsel, and to close this file.

11      **DATED** this 4th day of February, 2014.

12

13                                    *s/Fred Van Sickle*
                                        Fred Van Sickle
14                          Senior United States District Judge

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 19